### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| | : | |
| IN RE:  PATRICK LEE OLSON | : | CHAPTER 7 |
| | : | |
| Debtor | : | No. 22-11556-mdc |
| | : | |

### ORDER

AND NOW, this _____ day of _____, 2023, upon consideration of Debtor's Motion to Avoid Judicial Lien on Real Property, and the Response of Michael Wiley in opposition thereto, it is hereby ORDERED that Debtor's Motion is DENIED in its ENTIRETY with PREJUDICE.

IT IS FURTHER ORDERED that the Respondent Wiley's judgment in the amount of $3,678,122.58 (the "Judgment") shall remain in full force and effect as a lien against the Debtor's real property.

_____
MAGDELINE D. COLEMAN
CHIEF U.S. BANKRUPTCY JUDGE

***IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA***

|  |  |  |
|---|---|---|
| | : | |
| IN RE:  PATRICK LEE OLSON | : | CHAPTER 7 |
| | : | |
| Debtor | : | No. 22-11556-mdc |
| | : | |

## RESPONDENT MICHAEL WILEY'S RESPONSE IN OPPOSITION TO DEBTOR PATRICK LEE OLSON'S MOTION TO AVOID JUDICIAL LIEN ON REAL PROPERTY

Respondent Michael Wiley, successor by assignment to McGrath Technical Staffing, Inc. d/b/a McGrath Systems ("Wiley" or "Respondent"), by and through his undersigned counsel, herein responds in opposition to Debtor Patrick Lee Olson's ("Olson" or "Debtor") Motion to Avoid Judicial Lien on Real Property (the "Motion to Avoid Lien"), and avers as follows:

1.    Admitted.  Respondent does not dispute that the Debtor filed a petition under Chapter 7 of the Bankruptcy Code.

2.    Admitted in part, denied in part.  Respondent acknowledges that the Debtor claims an exemption on the real property at 101 Blossom Way, Pottstown, PA. However, Respondent disputes that the Debtor is entitled to the avoidance of the entirety of the lien, considering the nature and origin of the lien.

3.    Denied.  Respondent disputes the valuation of the real property as stated by the Debtor in his Schedule A/B and the claimed homestead exemption of $27,900.00.  By way of further answer, Zillow.com currently estimates that the value of the Debtor's real property is $821,200.00.  A true and correct copy of a printout from the Zillow.com website indicating same is attached hereto as Exhibit "1".

4.      Admitted in part, denied in part.  Respondent confirms he is the holder of a judicial lien against the Debtor's real property by virtue of a judgment entered against the Debtor in the Chester County Court of Common Pleas; however, it is denied that the judgment lien was not assigned for no consideration.  By way of further answer, Respondent Wiley has been severely damaged by the Debtor's intentional fraudulent acts.  By way of further answer, the Debtor's fraudulent acts have resulted in Respondent's company going out of business and have cost the Respondent millions of dollars.  By way of further answer, the Debtor's actions even resulted in Respondent Wiley having to file for a personal bankruptcy.  Respondent Wiley is the Debtor's victim and the Debtor (a convicted criminal) should not be permitted to continue to claim that Respondent Wiley has done anything improper as a result of the Debtor's intentional fraudulent and damaging actions.  By way of further answer, with regard to Respondent's $1.00 valuation of his company during his bankruptcy, the $1.00 valuation included the value of the company's assets (including the Judgment), less its liabilities (caused by Debtor).  It should be noted that these liabilities were so significant that it drove the company (which had been very successful before Debtor Olson's fraudulent scheme) to go out of business. Further, this downturn which was specifically caused by Debtor's fraudulent and criminal scheme, also caused Respondent's personal bankruptcy.  Debtor's claim that Respondent valued the Judgment at $1.00 is wholly disingenuous and wrong.

5.      Denied as a conclusion of law.  By way of further answer, the priority of the liens against the Debtor's real property is a question of law that must be decided

by this Court.  By way of further answer, the mortgage modifications entered into by

PHH Mortgage resulted in the loss of priority, as the modification altered certain

aspects of the original mortgage.  By way of further answer, if the Debtor's real

property were properly valued at or around the current Zillow estimate of $821,000,

there would be substantial equity in the real property after deducting the first two

mortgage balances.  Specifically, there would be at least $229,569.65 in equity.  The

Debtor should not be permitted to avoid Respondent's proper lien, especially when

the Respondent's lien is the result of the Debtor's fraudulent and criminal actions.

6.      Denied as a conclusion of law for which no response is required.

Respondent disputes the Debtor's calculation regarding the impairment of the

Debtor's homestead exemption.  By way of further answer, if the Debtor's real

property were properly valued at or around the current Zillow estimate of $821,000,

there would be substantial equity in the real property after deducting the first two

mortgage balances.  Specifically, there would be at least $229,569.65 in equity.  The

Debtor should not be permitted to reduce Respondent's lien below $229,569.65,

especially since the Respondent's lien is the result of the Debtor's fraudulent and

criminal actions.   By way of further answer, Respondent contends that the Debtor's

attempt to avoid the lien is an effort to evade the legal consequences of his fraudulent

and criminal behavior. Given the facts and the law, it is not equitable or just to allow

the Debtor to enjoy an unencumbered interest in his property while evading his

proper obligations to the Respondent, which was due to Debtor's fraud (and is not

dischargeable).

WHEREFORE, Respondent Michael Wiley, successor by assignment to McGrath Technical Staffing, Inc. d/b/a McGrath Systems, respectfully requests that this Honorable Court deny the Debtor's motion to avoid and reduce the judicial lien of Michael Wiley, and grant such other relief as is just and proper.

BERGER LAW GROUP, PC

By: /s/:  Phillip D. Berger, Esq.

Dated: June 9, 2023              PHILLIP D. BERGER, ESQUIRE

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| IN RE:  PATRICK LEE OLSON | : | CHAPTER 7 |
|  | : |  |
| Debtor | : | No. 22-11556-mdc |
|  | : |  |

## RESPONDENT MICHAEL WILEY'S BRIEF IN FURTHER OPPOSITION TO DEBTOR PATRICK LEE OLSON'S MOTION TO AVOID JUDICIAL LIEN ON REAL PROPERTY

## I.    INTRODUCTION

Respondent Michael Wiley, successor by assignment to McGrath Technical Staffing, Inc. d/b/a McGrath Systems ("Wiley" or "Respondent"), by and through his undersigned counsel, herein responds to Debtor Patrick Lee Olson's ("Olson" or "Debtor") Motion to Avoid Judicial Lien on Real Property.  As the debtor seeks to avoid the lien under 11 U.S.C. § 522(f)(1), it is essential to underline that the judicial lien at issue caused by Debtor's intentional fraudulent act, which has resulted in criminal prosecution, jail time, and a forfeiture being entered.  Also, due to Debtor's fraud, Respondent's lien is not dischargeable.

## II.    FACTS

This matter relates to a judgment entered on September 10, 2018 in the Montgomery County Court of Common Pleas at Docket No. 2018-22559 in favor of McGrath and against Mr. Olson in the amount of $3,678,122.58 (the "Judgment"). The Judgment was subsequently transferred to the Chester County Court of Common Pleas at Docket No. 2019-06782-JD and assigned to Respondent Wiley. The Judgment is the result of the fraud perpetrator by the Debtor, against McGrath

and its principal Respondent Wiley.

By way of background, in or about 2017, the Debtor approached Mr. Wiley about a project that the two could work on together, with a company called CSS located in Virginia.  The Debtor was to handle the technical side of the project, while Mr. Wiley was to arrange and provide the funding for the project.  The Debtor informed Mr. Wiley that the project was going to require approximately $2.5 million to $3.0 million in funding, and the Debtor requested that Mr. Wiley supply one-half of these required funds.

Mr. Wiley reviewed the information regarding the project provided by the Debtor and approached his bank about funding said project.  After Mr. Wiley's bank reviewed the project information, the Bank requested the assignment of the contract with CSS as collateral for the loan.  The Debtor provided Mr. Wiley with what appeared to be a fully executed contract with CSS (the "Contract"), which Contract was allegedly signed by CSS's Chief Operating Officer.  However, unbeknownst to the Respondent or to the Bank, CSS's Chief Operating Officer had left CSS earlier in the year, and that individual had not signed the Contract.  In fact, upon information and belief, it was the Debtor who forged CSS' prior Chief Operating Officer's signature on the Contract.

Having no reason to doubt the authenticity of the Contract, Mr. Wiley presented the Contract to the Bank as collateral for the loan, and partially due to the assigned Contract, the Bank then approved the loan and began to fund the (alleged) CSS project in increments.

Despite the fact that the project was fully funded, the project failed to close in 2017.  At this time, the Debtor  began providing numerous excuses and stories to Respondent Wiley as to why the project was not closing.  When the project did not close in the beginning of 2018, Respondent Wiley requested that the Debtor either pay back the monies forwarded by Mr. Wiley from his Bank (for which Mr. Wiley was personally liable), or provide a promissory note to Mr. Wiley.  The Debtor, by and through his entity Idea IT Solutions LLC ("Idea IT") then provided McGrath with a promissory note in the amount of $1,261,000.00 (the "Loan") dated April 6, 2018 (the "Note"), which Loan was unconditionally guaranteed by Debtor Olson (the "Guaranty"). The Note required that the Debtor repay the Loan via payments of $40,000.00 per month until the CSS project closed.

While the Debtor made one payment, the Debtor made no further payments then due.  It was at this time that it became apparent that the whole CSS project was bogus, and that the Debtor had stolen the money from the Respondent. Respondent Wiley had already provided the Debtor with over $1.2 million, which monies were supposed to be used by the Debtor to fund the alleged CSS project.

Moreover, Debtor Olson promised the Respondent that the CSS project would yield payments that totaled over $7 million, which payments were to be split between Respondent Wiley and Debtor Olson.  However, there was no CSS project, as that CSS project was all made up by the Debtor in order to extract millions of dollars from the Respondent, and to prevent the Respondent from calling prior loans which Respondent had provided to the Debtor for other projects due.

Instead of using the funds for the alleged CSS Project, the Debtor took this money for his own personal use.  Upon information and belief, the Debtor lost almost all of the $1.2 million provided by Respondent Wiley while gambling at various casinos, and by paying for Debtor's own personal expenses.

After the Debtor's fraud became apparent, Respondent Wiley contacted the Whitpain Police, who began an investigation of the Debtor's fraudulent and illegal actions.  In September 2019, the Debtor was charged with forgery and was eventually found guilty and sentenced to 14 days in jail, as well as restitution in the amount $1,041,000.00, which restitution was to be paid to Respondent Wiley through the Commonwealth (the "Restitution Judgment").  The restitution required monthly payments of $12,000.00 a month; however, no such payments have ever been made by the Debtor (the Debtor made only one partial payment in the amount of $50.00 to Respondent Wiley in restitution).

Based on the above facts, on July 5, 2022, Respondent Wiley filed an Adversary Complaint objecting to the Debtor's Discharge of his obligation to Respondent Wiley.  The Adversary Complaint alleges that as the Judgment is the result of the Debtor's intentional fraudulent and illegal acts, that the Debtor cannot simply discharge his obligations due to Respondent Wiley stemming from said fraudulent conduct.  Respondent Wiley therefore seeks the denial of the Debtor's discharge as it relates to the amounts due to Respondent Wiley.  The Adversary Action is still pending before this Court.

## III.    ARGUMENT

### A. The Nature of Debtor's Fraudulent Act Warrants the Continuation of the Lien

The Respondent contends that the judgment lien cannot be avoided under 11 U.S.C. § 522(f)(1) because of the exceptional circumstances surrounding this case. The Debtor committed an intentional fraudulent act, a transgression of such severity that it has led to Debtor's criminal prosecution and Debtor's subsequent incarceration. The judicial lien is not a standard financial obligation; it is a direct consequence of a court's judgment that found the Debtor guilty of engaging in direct fraud.  Such actions are not dischargeable.  Further, the lien serves not only as a monetary judgment but also as a form of punishment and deterrence against the Debtor's unlawful conduct. Avoiding (even partially) such a lien would contravene the public policy of deterring fraud, and enforcing the obligations due when a Debtor engages in criminal conduct.

Moreover, it should be noted that part of the Judgment relates to the Restitution Judgment ordered by the Montgomery County Court of Common Pleas against Debtor Olson.  Section 523(a)(7) excepts from discharge the bankrupt's debts to the extent "such debt is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss… ." *In re Thompson*, 418 F.3d 362, 363 n.1 (3d Cir. 2005).

Furthermore, if this Court were to grant the Debtor's request to avoid (even in part) Respondent's lien, this Court would effectively be reducing a state criminal proceedings restitution order.  Such an action would violate the rights of the states

to unfettered administration of their criminal justice system. *In re Thompson,* 418 F.3d 362, 368 (3d Cir. 2005) *citing Kelly,* 479 U.S. at 43-44 ("Here, as in *Kelly,* 'we must consider the language of … § 523 in light of the history of bankruptcy court deference to criminal judgments and in light of the interests of the States in unfettered administration of their criminal justice systems.'").

Accordingly, the Debtor's Motion to Avoid Lien should be denied and the Respondent's judicial lien should remain in full force and effect.

### B.  The Lien is Not Impairing an Exemption under Bankruptcy Law

Under 11 U.S.C. § 522(f)(1), a debtor can only avoid a lien to the extent that it impairs an exemption. The Debtor argues that the homestead exemption is impaired by the lien. However, the Respondent disputes the Debtor's calculation regarding the impairment of the homestead exemption.

Specifically, if the Debtor's real property were properly valued at or around the current Zillow estimate of $821,000, there would be at least $229,569.65 in equity in the real property after deducting the first two mortgage balances (and even more if this Court were to determine that the modification of the first mortgage caused it to lose its lien priority).  The Debtor should not be permitted to avoid Respondent's lien (or any part thereof) when there is so much equity in the property, and when the Respondent's lien is the result of the Debtor's fraudulent and criminal actions.

Moreover, the mortgage modification entered into by PHH Mortgage has resulted in a loss of priority, as the modification alters certain aspects of the original mortgage. *See, e.g., Ter-Hoven v. Kerns*, 2 Pa. 96 (1845) (if the modification includes

"creat[ion of] a liability for the first time", the mortgage may lose priority over junior

creditors).

This Court must examine the mortgage modification to confirm the alteration

of the original mortgage so as to cause the PHH Mortgage to lose its priority.  As the

PHH Mortgage has lost its priority as a result of the modification, there is even more

equity in the property that could be used to pay Respondent's Judgment.

Furthermore, even if the homestead exemption were indeed impaired, the

egregious nature of the fraudulent act perpetrated by the Debtor, and the resultant

significant harm to the Respondent, mean that the avoidance of the lien would not

serve the underlying equitable purposes of the Bankruptcy Code. Allowing the

Debtor to avoid the lien (even in part) would effectively reward fraudulent behavior

and undermine the purpose of the homestead exemption, which is not intended to

protect property obtained through fraudulent activities.

## III. CONCLUSION

For the reasons stated herein, the Respondent Michael Wiley respectfully

requests that this Court deny the Debtor's Motion to Avoid Judicial Lien in its

entirety and allow Respondent's Judgment to remain in full force and effect.

BERGER LAW GROUP, PC

Dated:  June 9, 2023          By: /s/:  Phillip D. Berger, Esq.
                              PHILLIP D. BERGER, ESQUIRE
                              919 Conestoga Road, Building 3, STE 114
                              Rosemont, PA 19010
                              (610) 668-0800
                              PA ID #58942

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
|  | : |  |
| IN RE:  PATRICK LEE OLSON | : | CHAPTER 7 |
|  | : |  |
| Debtor | : | No. 22-11556-mdc |
|  | : |  |

## <u>CERTIFICATE OF SERVICE</u>

I, Phillip D. Berger, Esquire, do hereby certify that on June 9, 2023, I caused a true and correct copy of the foregoing to be filed electronically.

Notice of this filing will be sent to the parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

BERGER LAW GROUP, PC

By: /s/:  Phillip D. Berger, Esq.
PHILLIP D. BERGER, ESQUIRE
919 Conestoga Road, Building 3, STE 114
Rosemont, PA 19010
(610) 668-0800
PA ID #58942

Dated: June 9, 2023

**EXHIBIT 1**

# 101 Blossom Way, Pottstown, PA 19465

 zillow.com/homedetails/101-Blossom-Way-Pottstown-PA-19465/71462012_zpid



✎
Edit

4 bd 3,648 sqft

: $821,200: $3,949
Est. refi payment: $5,493/mo

Ⓢ Refinance your loan

- 🏠
  ZILLOW HOME LOANS

  Get pre-qualified for a loan

  At Zillow Home Loans, we can pre-qualify you in as little as 3 minutes with no impact to
  your credit score.
  An equal housing lender. NMLS #10287.

- **Ways to sell your home**



Work with an agent

Zillow Premier Agents are among the best in the business. We'll match you with a top seller's agent in your area.

Find an agent



Sell it yourself

Reach the largest audience of shoppers with a free For Sale by Owner listing on Zillow.

Create a listing
**Owner options**



List your home for rent

Find your next renter with Zillow Rental Manager. Plus, with online applications, you can quickly screen prospective tenants – for free.

Learn more
$3,949/mo

Rent Zestimate$^{®}$



Refinance and save

Refinancing to a lower rate could help reduce your monthly payments and save thousands over the life of the loan.

See today's rates
$5,358/mo

Est. payment

- **Overview**

*Note: This property is not currently for sale or for rent on Zillow. The description and property data below may've been provided by a third party, the homeowner or public records.*

This 3648 square foot single family home has 4 bedrooms and 4.0 bathrooms. This home is located at 101 Blossom Way, Pottstown, PA 19465.

**Facts and features** <u>Edit</u>

- ▦ Type:SingleFamily
- 📅 Year built:2005
- 🔥 Heating:Forced air, Propane / Butane
- ❄ Cooling:Central
- P Parking:6 Parking spaces
- ⛰ Lot:3 Acres

Interior details

Bedrooms and bathrooms

- Bedrooms: 4
- Bathrooms: 4
- Full bathrooms: 3
- 1/2 bathrooms: 1

Basement

Basement: Unfinished

Flooring

Flooring: Hardwood

Heating

Heating features: Forced air, Propane / Butane

Cooling

Cooling features: Central

Appliances

Appliances included: Dishwasher, Dryer, Microwave, Range / Oven, Refrigerator, Washer

Other interior features

- Total interior livable area: 3,648 sqft
- Fireplace: Yes

Property details

Parking

- Total spaces: 6
- Parking features: Garage - Attached

Property

- Exterior features: Stucco
- View description: Mountain

Lot

Lot size: 3 Acres

Other property information

Parcel number: 170600721200

Construction details

Type and style

Home type: SingleFamily

Material information

Roof: Shake / Shingle

Condition

Year built: 2005

Community and Neighborhood Details

Location

Region: Pottstown

Services availability

## Price and tax history

Price history

| Date | Event | Price |
|------|-------|-------|
| 8/3/2007 | Sold | $589,000 +5.2% $161/sqft |
| Source: Public Record | | |
| 3/7/2006 | Sold | $560,000 $154/sqft |
| Source: Public Record | | |

Public tax history

| Year | Property taxes | Tax assessment |
|------|----------------|----------------|
| **2022** | $13,033 +2.2% | $313,590 |
| **2021** | $12,754 +148.5% | $313,590 |
| **2020** | $5,133 -57.1% | $313,590 |

Find assessor info on the <u>county website</u>

- **Neighborhood: 19465**

Neighborhood stats provided by third party data sources.

**Nearby schools in Pottstown**

About GreatSchools

The GreatSchools Summary Rating is based on several metrics.

-

Take the next step

Find a refinance lender to learn about saving money on your monthly payment or over the life of your loan.

Zillow Group Marketplace, Inc. NMLS #1303160